**FILED**

SEP 2 9 2025

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

TEMISAN AJAGBAWA,
Plaintiff,

v.

AMAZON.COM SERVICES LLC,
c/o Corporation Service Company
d/b/a CSC-Lawyers Incorporating Service Company
211 E. 7th Street, Suite 620
Austin, TX 78701-3218
Defendant.

Case No.: 5:25-CV-00823-FB-RBF

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND RETALIATION

### I. JURISDICTION AND VENUE

1. This is an action brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e et seq.), for unlawful retaliation, racially disparate treatment, constructive discharge, and related violations.

2. Jurisdiction is proper under 28 U.S.C. §1331 (federal question) and 42 U.S.C. §2000e-5(f)(3).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because the acts complained of occurred in this District and Defendant conducts business in this District.

### II. PARTIES

1. Plaintiff Temisan Joseph Ajagbawa is an individual residing in Austin, Texas, and was employed by Defendant as a salaried Area Manager.

2. Defendant Amazon.com Services LLC is a Delaware limited liability company doing business in Texas, including at the SAT3 fulfillment center in San Antonio, where the events at issue occurred.

### III. FACTUAL BACKGROUND

1. Plaintiff was employed as an L4 Area Manager at Amazon SAT3 in San Antonio, Texas from July 2024–June 2025.

2. In May 2025, approximately one week before the Slack exchange with Briana Andazola, she confronted Plaintiff during a one-on-one meeting in the break room with his assistant, demanding that Plaintiff report directly to her whenever he took lunch or any break. Plaintiff objected, explaining that this was not standard practice and that even his direct manager did not require this. Briana insisted that 'all her managers' followed this rule. Within an hour, Plaintiff confirmed with two other Area Managers — Gracie Yocum (white female) and Daniel Amaya (Hispanic male) — whether they were required to report breaks to Briana. Both confirmed they were not, showing disparate treatment.

3. After informing L6 Manager Briana Andazola in a private Slack chat that he would be leaving early using earned personal time, Plaintiff was questioned about the stated personal reason for leaving. When Plaintiff explained that the reason was unforeseen, Andazola abruptly stopped replying in the private chat. Within minutes, she created a new Slack group chat with Plaintiff's direct supervisor, Klint Dailey, where she posted a lengthy, detailed message announcing a new policy — applied only to Plaintiff — requiring two weeks' notice for all time off, including same-day emergencies. Slack timestamps show the message was sent almost immediately after Plaintiff's private message, and the level of detail confirms it had been pre-drafted (May 2025).

4. Plaintiff reported the issue to HR representative Emily Jirka, who initially confirmed that the requirement violated Amazon's policy and asked Plaintiff to provide Slack screenshots of the conversation. Despite reviewing the Slack messages that supported Plaintiff's claims, the SAT3 HR team dismissed the official complaint as showing 'no policy violation.' (May 2025).

5. Within a week of the dismissal, Plaintiff was placed on a Pivot Plan with retaliatory terms, including a requirement to badge in by 5:55 PM daily. Plaintiff's actual shift began at 6:30 PM, with a pre-shift sync at 6:00 PM. This requirement was unreasonable and applied only to him. (June 2025).

6. Plaintiff's first direct supervisor, Janae Dillon (a Black L6 leader), privately warned him early in his tenure about Klint Dailey. She disclosed that he had a prior HR issue and had been removed as her supervisor. This corroborated Plaintiff's later concerns of potential targeting.

7. The Pivot included a requirement to 'Earn Trust,' based on a discredited HR complaint made six months prior by an associate whom Plaintiff had previously attempted to write up for policy violations. That associate later apologized for fabricating the complaint — an event witnessed by a leadership member — and was ultimately terminated for similar misconduct.

8. These actions were retaliatory, inconsistently applied, and followed directly from Plaintiff's protected complaint. Plaintiff resigned under the Pivot option due to the escalating hostile environment (June 13th 2025).

9. After Plaintiff resigned under the Pivot option, Amazon issued a $5,200.24 repayment demand, despite prior written and verbal assurances from both Klint Dailey and HRBP Kelsey Caselden Calvillo that Plaintiff would not be held liable for relocation or bonus repayment if he chose severance. Plaintiff returned all equipment and promptly challenged the demand by submitting documentation, after which the repayment was reversed.

10. Plaintiff had reached out to Amazon's HRBP, Ethics, and Repayment teams requesting resolution and accountability. However, these internal channels failed to fully address his concerns. Approximately a week later, Amazon's Executive Escalations team independently contacted Plaintiff, stating they were investigating the misconduct claims. Despite receiving a detailed escalation email from Plaintiff, the company responded selectively — acknowledging only minor points and ignoring his proposed resolution entirely.

11. On August 1, 2025, in the course of Plaintiff's private attempt to resolve the matter directly with Amazon's Executive Escalations team, Plaintiff received a written response from Amazon HR. The response stated that 'the investigation did not find any violation of Amazon policy or standards of conduct,' while simultaneously conceding that 'we identified an opportunity for improvements.' This contradictory position — issued after HR had previously confirmed the violation and reviewed Slack evidence — illustrates Amazon's inconsistent handling of Plaintiff's complaints.

12. Plaintiff filed an EEOC Charge of Discrimination. (See Exhibit A, EEOC Charge).

13. Plaintiff later received a Right-to-Sue Letter from the EEOC. (See Exhibit B, EEOC Right-to-Sue Letter).

## IV. STATEMENT OF CLAIMS

### Claim 1: Retaliation for Engaging in Protected Activity

1. Plaintiff submitted a good faith HR complaint about a retaliatory and discriminatory time-off restriction.

2. In direct response, Defendant placed Plaintiff on a Pivot Plan with targeted, excessive expectations.

3. This adverse action, closely following the protected activity, constitutes unlawful retaliation under Title VII.

### Claim 2: Constructive Discharge

1. Plaintiff was subjected to unreasonable performance expectations and denied leadership support, causing intolerable working conditions.

2. The pressure and isolation forced Plaintiff to resign, meeting the legal standard for constructive discharge.

### Claim 3: Racially Disparate Treatment

1. Plaintiff, the only Black Area Manager in the department, was singled out for stricter requirements not imposed on similarly situated non-Black managers.

2. Briana Andazola required Plaintiff to report his lunch and breaks directly to her, a rule she falsely claimed applied to all her managers. In reality, non-Black Area Managers Gracie Yocum (white female) and Daniel Amaya (Hispanic male) confirmed they were not subject to this requirement.

3. Plaintiff was also subjected to a two-week time-off policy and an early badge-in requirement not applied to non-Black managers.

4. Shortly after Plaintiff's resignation, a white Area Manager who had been on extended leave was returned to the team, effectively replacing Plaintiff.

5. These facts demonstrate that Plaintiff was treated less favorably than similarly situated non-Black managers and replaced by someone outside his protected class, and that his race was a motivating factor in these adverse actions.

### Claim 4: Hostile Work Environment / Failure to Investigate

1. Despite clear evidence — including Slack logs and internal confirmation — HR failed to take corrective action.

2. HR's dismissal of valid complaints and subsequent inaction allowed retaliation to proceed unchecked.

3. The persistent imposition of disparate requirements and HR's failure to act created a hostile work environment that altered the conditions of Plaintiff's employment.

### Claim 5: Retaliatory Use of Performance Tools

1. Defendant used the Pivot Plan to impose discredited performance criticisms as a pretext for retaliation.

2. This included resurrecting a debunked associate complaint and using it to justify excessive performance expectations.

## V. PRAYER FOR RELIEF

1. Back pay from the date of constructive discharge through re-employment;

2. Compensatory and punitive damages as permitted by law;

3. Pre- and post-judgment interest and costs;

4. Any other relief the Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on September 24, 2025.

Respectfully submitted,

*Temisan Ajagbawa 09/25/2025*

Temisan Ajagbawa, Pro Se Plaintiff
8340 Bluff Springs Road, Apt 4308 | Austin, TX 78744
Phone: (832) 991-5275 | Email: temisan111@gmail.com
Date: 09/24/2025

Exhibit A

Amazon.com Services LLC (SAT3 Fulfillment Center)
6806 Cal Turner Dr
San Antonio, TX 78220

■■

## V. STATEMENT OF CLAIMS

As a direct and proximate result of Defendant's unlawful conduct, Plaintiff asserts the following legal claims:

### Count I – Retaliation under Title VII

Plaintiff engaged in protected activity by reporting race-based treatment, policy violations, and unlawful management conduct to HR. Within days, he was issued a retaliatory Pivot containing exaggerated and discredited claims — including events more than six months old. Despite documented policy violations against Plaintiff, including Slack evidence, no remedial action was taken.

An L6 manager issued a fabricated requirement mandating two weeks' notice for all PTO, even emergencies, shortly after Plaintiff used protected leave. This rule, delivered via a prewritten Slack message in a group chat with the L7, violated Amazon's own time-off policy. Plaintiff submitted screenshots to HR, which confirmed the violation. However, when Plaintiff filed a formal HR complaint, it was dismissed without investigation or interview. The retaliatory Pivot was issued days later.

The Pivot also cited a discredited disciplinary event: After Plaintiff attempted to document a write-up for an associate's policy violation, the associate verbally escalated and filed a false HR report. Despite corroborating evidence and a witness, Plaintiff's L7 coached him for "earning trust." Corporate HR later dismissed the associate's report, and the associate apologized in front of a Process Assistant. Including this incident in the Pivot underscores retaliatory intent.

In November 2024, a Process Assistant told Plaintiff they would work with any manager except him. Plaintiff involved the PA's direct supervisor to seek clarification. During that meeting, the PA admitted they had no reason and apologized. Plaintiff opted not to escalate further at the time. However, in May 2025, the PA's behavior declined again amid increasing pressure from senior management. Plaintiff filed an HR complaint, which was dismissed without an interview and labeled "no policy violation found."

This sequence of protected activity, followed closely by disciplinary action and internal hostility, supports a strong inference of retaliation under *Clark County School Dist. v. Breeden*, 532 U.S. 268 (2001).

### Count II – Racial Discrimination / Disparate Treatment

Plaintiff was the only Black Area Manager on his shift. He was:

- Singled out to report every break — a rule not applied to non-Black AMs.
- Assigned to run a department requiring three AMs and four PAs with only himself, two PAs, and one newly hired AM still in training.
- Scrutinized or denied for PTO requests that were auto-approved for others.

A credible Black L6 supervisor informed Plaintiff that the L7 had previously been removed from managing her due to HR intervention for inappropriate behavior.

In another instance, Plaintiff was added to a Slack group titled "SAT3 Bros" and removed shortly after. This exclusion reflected race-based social isolation, further contributing to disparate treatment.

2

**Count III – Hostile Work Environment**

Plaintiff was subjected to a workplace climate defined by bias and intimidation. He faced baseless allegations, including a racial slur complaint and an accusation of misconduct while performing routine duties. Both were quickly dismissed.

In contrast, Plaintiff's own reports—corroborated by Slack logs and witnesses—were ignored, closed without interviews, or mocked by HR staff. This imbalance created a hostile and isolating environment in violation of Title VII.

**Count IV – Constructive Discharge**

As of June 10, 2025, the day Plaintiff received the Pivot:

- He had no L6 supervisor for over five months.
- He was solely managing a department that required three AMs.
- Amazon refused to backfill a critical AM vacancy due to LOA.
- He was not informed he would manage the entire shift alone.
- He had only two PAs instead of the required four.
- He had already been told he was ineligible for promotion for two future cycles.

The Pivot included vague, unrealistic directives that were impossible to meet under the staffing conditions imposed. Amazon's refusal to remedy the situation or address the hostile environment made continued employment intolerable. Under *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004), Plaintiff's resignation qualifies as constructive discharge.

**Count V – HR Negligence and Failure to Investigate**

Amazon HR exhibited gross negligence in failing to address unlawful practices. Specifically:

- Dismissing complaints without interviews or evidence review.
- Confirming policy violations, but taking no action.
- Responding immediately to unverified complaints against Plaintiff, but disregarding his detailed reports.
- Laughing at serious reports of verbal abuse.

HR's biased handling of complaints enabled ongoing retaliation and harassment.

**Count VI – Reputational Harm from Misclassification**

Plaintiff resigned on June 13, 2025, after choosing the "voluntary exit" option outlined in his Pivot, which promised full repayment relief. HRBP confirmed Plaintiff would owe nothing. Despite this, on July 2, 2025, Plaintiff was falsely classified as terminated and billed \$5,200. After contesting it, Amazon reversed the charge and issued an apology. Nonetheless, this misclassification harmed Plaintiff's professional standing in interviews and background checks.

## VI. DAMAGES SOUGHT

Plaintiff respectfully requests that the Court:

1. Declare Defendant's conduct to be in violation of Title VII and 42 U.S.C. § 1981.
2. Award compensatory damages in an amount no less than \$1,000,000 for:
3. Emotional distress
4. Reputational harm
5. Lost wages and benefits
6. Award punitive damages in an amount to be determined by a jury, sufficient to deter similar conduct.
7. Award attorney's fees and litigation costs.
8. Grant such other and further relief as the Court deems just and equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court grant judgment in his favor, and against Defendant, and award the relief described above, together with such further relief as the Court deems just and proper.

**Respectfully submitted,**

Temisan Ajagbawa\ 18014 Brazos River Cir, Cypress TX 77433\ (832) 991-5275\ temisan111@gmail.com\



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**San Antonio Field Office**

5410 Fredericksburg Road, Suite 200
San Antonio, TX 78229-3555
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
San Antonio Direct Dial: (210) 640-7530
FAX (210) 281-2522
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued on: July 10, 2025

**To:**   Temisan J. Ajagbawa
18014 Brazos River Cir
CYPRESS, TX 77433

**Re:**   Temisan J. Ajagbawa v. Amazon.com Services LLC

EEOC Charge Number: 451-2025-04887

EEOC Representative and email:         Lidia Torres
Federal Investigator
lidia.torres@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed. The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is the official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.) If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 451-2025-04887. Please retain this notice for your records.

On behalf of the Commission:

For

HECTOR COLON-PADRO   Digitally signed by HECTOR COLON-PADRO
Date: 2025.07.10 10:36:20 -05'00'

Travis Nicholson
Dallas District Director

cc:

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

UNITED STATES
POSTAL SERVICE®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

PRIORITY®
★ M A I L ★

Label 228, July 2013

FOR DOMESTIC AND INTERNATIONAL USE

FROM: Temisan Aiagbawa
8340 Bluff Springs Road #4308
Austin, TX 78744

TO: Clerk of Court
United States District Court
Western District of Texas — San Antonio Division
Attn: Civil Intake, 655 East Cesar E. Chavez
Boulevard, Room G-65, San Antonio, TX 78206





RECEIVED
SEP 28 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY CLERK

FIRMLY TO SEAL

US POSTAGE PAID
$11.00

Origin: 78744
09/25/25
4804160157-93

0 Lb 4.60 Oz

RDC 03

C008

PRIORITY MAIL®

EXPECTED DELIVERY DAY: 09/29/25

SHIP
TO:
RM G65
655 E CESAR E CHAVEZ BLVD
SAN ANTONIO TX 78206-1106

USPS TRACKING® #

9505 5160 1607 5288 1004 72

EP14F July 2022
OD: 12 1/2 x 9 1/2



USPS.COM/PICKUP

PS00001000014

